**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case No. 0:20-cv-62648-RS**

SURFACES, INC.,

   Plaintiff,

v.

POINT BLANK ENTERPRISES, *et al.*,

   Defendants.

## DEFENDANTS POINT BLANK ENTERPRISES, INC. AND MICHAEL FOREMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND FOR ATTORNEYS' FEES

Defendants Point Blank Enterprises, Inc. ("Point Blank") and Michael Foreman ("Foreman") (collectively, "Defendants"), file this Motion to Dismiss ("Motion") plaintiff Surfaces, Inc. ("Surfaces") First Amended Complaint ("FAC") [ECF No. 26.] Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants respectfully seek dismissal of the FAC in its entirety.

## INTRODUCTION

This case involves a dispute between Surfaces and Trigon International, Inc. (Trigon)[1] regarding a "demonstration kit" (the "Demo Kit") that Surfaces alleges contains confidential information and constitutes a trade secret. There is no factual or legal basis for Surfaces to include Point Blank or Foreman as defendants; by its own admission, Point Blank (and Foreman) returned the Demo Kit to Trigon—whom it received it from and the rightful owner as it relates to the Defendants. *Id.* at ¶ 60.

---

[1] The FAC also names Trigon International (Florida) Inc. For purposes of this Motion, Defendants will refer to both entities collectively as "Trigon." The remaining named defendant, Cenk Tuncay ("Tuncay"), is identified in the FAC as Trigon's President. *Id.* at ¶ 6.

10396171-4

By way of background, in December 2019, the Demo Kit (and other technology) belonged to Pabellon, Inc. ("Pabellon)—Surfaces' predecessor. *Id*. at ¶ 23. At that time, Pabellon entered into an agreement with Trigon to assist in finding potential business partners; in return, Trigon acquired "global sale and distribution rights" with respect to certain technology products. *Id*. Immediately thereafter, Tuncay began "pressing" Pabellon (and subsequently, Surfaces) CEO, Alex Rubin, to meet with Foreman because Point Blank was allegedly interested in utilizing Pabellon's technology for its products. *Id*. at ¶ 25. After meeting with Foreman, in January 2020, Pabellon signed an agreement with Trigon which granted "exclusive and worldwide sales rights to Trigon to act as agent/distributor of Pabellon for all [SPM] technologies." (the "Agreement"). *Id*. at ¶ 27. Pabellon also gave Tuncay/Trigon the Demo Kit to "assist Tuncay in brokering communications between Pabellon and potential clients." *Id*. at ¶ 29. Tuncay then provided Point Blank the Demo Kit. *Id*. at ¶ 39.

Subsequently, on August 28, 2020, Pabellon dissolved. *Id*. at ¶¶ 33-34. In or about September 2020, a dispute arose between Trigon and Surfaces regarding the Agreement; specifically, that Surfaces did not want to move forward with the Agreement that granted Trigon exclusive rights to the technology products. *Id*. at ¶ 42. Notably, Defendants ***never entered into any agreement (non-disclosure or otherwise)*** with Pabellon or Surfaces. After waiting for Surfaces and Trigon to try and resolve their dispute relating to the Agreement, on October 16, 2020, Point Blank informed Surfaces that it could not wait any longer and it would not move forward without Surfaces resolving its relationship with Trigon and its brokering services. *Id*. at ¶ 51. To avoid any further dispute, Point Blank removed itself from the negotiations. *Id*.

Importantly, in the FAC, Surfaces states that "Trigon was not permitted to transfer the kit to other parties and doing so constituted a serious breach…" *Id*. at ¶¶ 40-41. However, also in the

FAC, Surfaces admits that it was aware that Point Blank had the Demo Kit (since at least February 2020) and never claimed that it was a breach for Trigon to have provided the Demo Kit to Point Blank. *Id*. at ¶ 57, FN 1 ("The parties had previously planned to have Forman come to California to meet with Surfaces representatives personally and hand-deliver the kit during the meeting."). Surfaces knew that Point Blank had the Demo Kit through its authorized relationship with Trigon per the Agreement. *Id*. at ¶¶ 39, 56. Surfaces further admits that it knew Point Blank returned the Demo Kit to Trigon by October 19, 2020—three (3) days after Surfaces requested the return of the Demo Kit. *Id*. at ¶ 60. To be clear, Point Blank never entered into any agreement to return the Demo Kit to Surfaces. Instead, Point Blank returned the Demo Kit to Trigon—whom it received it from. *Id*. Anything beyond that occurrence is an issue to be resolved between Trigon/Tuncay and Surfaces.

This dispute, if any cognizable claims exist, is solely between Tuncay/Trigon and Surfaces. However, instead of removing Defendants from the FAC, Surfaces has doubled down and maintained the litany of frivolous claims against Point Blank and Foreman. Accordingly, this Motion will be accompanied with service of a motion for sanctions in accordance with Fed. R. Civ. P. 11(c)(2).

## SUMMARY OF THE ARGUMENT

As a preliminary matter, the majority of the claims are expressly preempted by the Florida Uniform Trade Secrets Act ("FUTSA"); namely, (i) Count VI (civil conspiracy to convert property and to misappropriate trade secrets), (ii) Count VIII (conversion), Count IX (tortious interference with business relations), and Count X (unjust enrichment). Alternatively, as addressed in more detail below, even if the law governing preemption ceased to exist, the claims should also be dismissed because they fail to sufficiently plead the required elements for the respective cause of action.

10396171-4

Additionally, the state and federal trade secret claims—Counts III, IV, V, and VI—should all be dismissed because, by its own statements in the FAC, Surfaces admits that Defendants did not misappropriate the Demo Kit and Surfaces failed to take the necessary steps to protect its alleged trade secret.

Finally, Count VII (Computer Fraud and Abuse Act ("CFAA")) is legally insufficient because Surfaces' concedes that Defendants immediately sent the Demo Kit to the entity it received it from—Trigon; accordingly, Defendants could not "access" the Demo Kit to satisfy the requirements of the CFAA. Moreover, Surfaces fails to plead the required statutory damages to maintain a CFAA claim.

The FAC should be dismissed in its entirety and Defendants are entitled to their attorneys' fees pursuant to § 688.005, Fla. Stat. (2020) and 18 U.S.C. § 1836(b)(3)(B)(D) for claims brought in bad faith.

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure:

> A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'The Court's duty to accept the facts in the complaint as true does not require it to ignore specific factual details 'in favor of general or conclusory allegations.'" *Merl v. Warner Bros. Entertainment, Inc.*, No. 12-20870-CIV, 2013 WL

4

266049, at *3 (S.D. Fla. Jan. 23, 2013) (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007)). "Indeed, when a document considered part of a pleading 'contradict[s] the general and conclusory allegations' of the pleading, the document governs." *Id.* (quoting *Griffin Indus. supra)*; *see also*, *Gen. Guar. Ins. Co. v. Parkerson*, 369 F.2d 821, 825 (5th Cir. 1966) ("complaint is plagued not by what it lacks, but by what it contains. All of the paths to relief which the pleading suggests are blocked by the allegations and the attached documents themselves, without more.").

## ARGUMENT AND MEMORANDUM OF LAW

### I.     Counts VI, VIII, IX, X are Expressly Preempted by FUTSA

The FUTSA states, in relevant part, that it "displace[s] conflicting tort, restitutory, and other law[s] of this state providing civil remedies for misappropriation of a trade secret" but does not affect other "civil remedies that are not based upon misappropriation of a trade secret." § 688.008, Fla. Stat. "Thus, as a general proposition, other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA." *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 908 & n.65 (M.D. Fla. 2007) (citing *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1180–81 (M.D. Fla. 2005) (where "the allegations of trade secret misappropriation alone comprise the underlying wrong, only the FUTSA claim will survive the motion to dismiss")). Thus, "[i]n order to pursue claims for additional tort causes of action where there are claims for misappropriation of a trade secret, there must be material distinctions between the allegations comprising the additional torts and the allegations supporting the FUTSA claim." *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335–36 (S.D. Fla. 2002)).

In determining whether common law claims are preempted by the FUTSA, courts consider whether the allegations supporting the common law claims "are distinguishable from the

allegations of trade secret misappropriation." *Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, 391 F. Supp. 2d 1148, 1167 (S.D. Fla. Jan. 5, 2005) (citing *Allegiance Healthcare Corp.*, 232 F. Supp. 2d 1329, 1336 (S.D. Fla. 2002).

Counts VI, VIII, IX, and X, of the FAC are indistinguishable from Counts III and IV, and therefore, should be dismissed.

### A. Count VI: Civil Conspiracy to Convert Property and to Misappropriate Trade Secrets

In Count VI, Surfaces realleges the same factual basis for its misappropriation claims as a conspiracy claim regarding the Demo Kit. FAC at ¶¶ 140-144 (Count VI). This is expressly prohibited pursuant to *Coihue, LLC v. PayAnyBiz, LLC*, No. 17-24062-CIV, 2018 WL 7376908, at *5 (S.D. Fla. Feb. 6, 2018) (plaintiff's civil conspiracy preempted by the FUTSA claim on a motion to dismiss).

### B. Count VIII – Conversion

Count VIII must be dismissed because the subject of the conversion claim is the Demo Kit—which is also the basis for the FUTSA claim. FAC at ¶¶ 156-162 (Count VIII); *Sentry Data Systems, Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1295 (S.D. Fla. 2018) (On a motion to dismiss, court dismissed "Plaintiff's claims for…Florida common law conversion of confidential information and proprietary information…each reallege all the prior allegations of the Complaint and are based on the "conversion" or "tak[ing]" of the same trade secrets and proprietary information as the misappropriation of trade secrets claims."); *Penalty Kick Management Ltd. V. Coca Cola Co.,* 318 F.3d 1284, 1297 (11th Cir. 2003) (The conversion must relate to items and/or information not designated as trade secrets in order to survive preemption).

### C. Count IX – Tortious Interference with Business Relations

In Count IX, Surfaces argues that the failure of Surfaces to return the Demo Kit has and/or will interfere with its business relationships. FAC at ¶¶ 163-175 (Count IX). This claim is preempted by FUTSA. *Pelfrey v. Mahaffy*, No. 17-80920-CIV, 2018 WL 3110794, at *4 (S.D. Fla. Feb. 7, 2018) (dismissing claim for tortious interference with business relationships as preempted where tortious interference, like FUTSA claim, was based on allegations of stealing confidential information from other party and then using it to divert other party's clients to a competing business); *Jouria v. CE Res., Inc.*, No. 15-61165-CIV, 2017 WL 3868422, at *4 (S.D. Fla. July 17, 2017 (dismissing tortious interference claim as preempted by FUTSA where "underlying misconduct for both claims [wa]s the same"); *Am. Registry, LLC v. Hanaw*, No. 13-352-CIV, 2014 WL 12606501, at *6 (M.D. Fla. July 16, 2014) (on a motion to dismiss, finding FUTSA preempted tortious interference claims where it was alleged that a defendant used trade secret information to solicit and steal customers).

### D. Count X: Unjust Enrichment

Finally, Surfaces' claim for unjust enrichment based on the "misappropriation" of the Demo Kit is also preempted by FUTSA. FAC at ¶¶ 176-178 (Count X). *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 910 (M.D. Fla. 2007) (plaintiff conceding in response to motion to dismiss that Florida Uniform Trade Secrets Act (FUTSA) preempted claim for unjust enrichment caused by misappropriation of trade secrets; FUTSA expressly authorizes plaintiff to recover for unjust enrichment caused by misappropriation.).

### E. Additional Grounds: Counts VIII, IX, X, Fail Under Rule 12(b)(6)
#### i. Count VIII: Conversion

Under Florida law, conversion "is an 'act of dominion wrongfully asserted over another's property inconsistent with his ownership therein'" *Sirpal v. University of Miami*, 684 F. Supp. 2d 1349, 1363 (S.D. Fla. 2010); *see also Indus. Park Dev. Corp. v. Am. Exp. Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (S.D. Fla. 2013). To state a claim for conversion, one must allege facts sufficient to show *ownership of the subject property* and facts that the other party wrongfully asserted dominion over that property. *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011). The "essence of conversion" is the possession of property "in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property." *Senfeld v. Bank of Nova Scotia Trust Co.,* 450 So. 2d 1157, 1161 (Fla. 3d DCA 1984). Furthermore, "[a] conversion occurs when a person who has a right to possession of property demands its return and the demand is not or cannot be met." *Day v. Amini*, 550 So. 2d 169, 171 (Fla. 2d DCA 1989). Ultimately, "In order to maintain an action for conversion, one must have possession of the property or an immediate right to possession." *Scherer v. Labors International Union,* 746 F. Supp. 73, 84 (N.D. Fla. 1988); *see also Dekle v. Calhoun,* 60 Fla. 53, 53 So. 14 (1910); *Seiff v. Presto Brick,* 168 So. 2d 700 (Fla. 3d DCA 1964), *certiorari denied,* 174 So. 2d 31 (Fla. 1965). And, certainly, a catchall phrase in the prayer for relief is insufficient to allege a possessory interest. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.").

Here, Surfaces' claim fails because (i) Defendants were authorized to have the Demo Kit; and once Point Blank removed itself from negotiations, Defendants returned the property to the entity it received it from—Trigon (FAC at ¶ 60); and (ii) as to Defendants, Surfaces did not have

an "immediate right to possession" of the Demo Kit—instead, Trigon did because that is where Defendants received the Demo Kit from. *Id*. at ¶ 39; *see also Id*. at ¶ 57, FN 1 ("The parties had previously planned to have Forman come to California to meet with Surfaces representatives personally and hand-deliver the kit during the meeting."). Moreover, Defendants received the Demo Kit from Trigon *after* Surfaces' predecessor, Pabellon, entered the Agreement and provided the Demo Kit to Trigon. *Id*. at ¶ 29 ("To assist Tuncay in brokering communications between Pabellon and potential clients, Pabellon gave Tuncay a demonstration kit…").

Surfaces cannot maintain a consistent position; on the one hand, Surfaces argues that "Trigon was not permitted to transfer the kit to other parties and doing so constituted a serious breach…" *Id*. at ¶ 41. However, Surfaces expressly contradicts itself because (i) Surfaces admits that there was no written provision in the Agreement that Trigon could not transfer the Demo Kit to Point Blank. *Id*. at ¶ 40 ("Consistent with its ***normal practices*** and industry custom, Pabellon loaned the demo kit to Trigon with the ***understanding*** that it would maintain custody of the equipment until instructed otherwise.") (emphasis added); and (ii) Surfaces was aware that Point Blank had the Demo Kit (since at least February 2020) and never claimed that it was a breach for Trigon to have provided the Demo Kit to Point Blank. *Id*. at ¶ 57, FN 1 ("The parties had previously planned to have Forman come to California to meet with Surfaces representatives personally and hand-deliver the kit during the meeting.").

Ultimately, there was no conversion because Defendants immediately returned the Demo Kit to its rightful owner in relation to Defendants—Trigon; and the fact that, just recently, Trigon has returned the Demo Kit to Surfaces, does not change the relationship, or lack thereof, between Point Blank and Surfaces. *Id*. at ¶ 69.

Accordingly, Count VIII should be dismissed.

9

10396171-4

### ii. Count IX: Tortious Interference with Business Relations

The elements of an action for tortious interference with a contract are (1) the existence of a business relationship under which the claimant has rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship; (4) by a third party; and (5) damage to the claimant cause by the interference. *Future Tech Int'l, Ltd. v. Tae II Media, Ltd.*, 944 F. Supp. 1538, 1569-70 (S.D. Fla. 1996).

Surfaces' claim must be dismissed because it fails to identify any customer or relationship that has been interfered with through Defendants' actions. *Coach Services, Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp .2d 1271, 1273 (S.D. Fla. 2010) ("Lucky's allegation that it was planning to sell its sunglasses to 'various customers' is too vague and abstract to satisfy the first element of a tortious interference claim."); *Sarkis v. Pafford Oil Co.,* 697 So. 2d 524, 526 (Fla. 1st DCA 1997), (affirming the trial court's dismissal of a complaint alleging tortious interference, because "[t]he amended complaint d[id] not identify the customers who were the subject of the alleged interference."); *see Bortell v. White Mountains Ins. Group, Ltd.*, 2 So. 3d 1041 (Fla. 4th DCA 2009) (dismissing complaint *with prejudice* for failure to sufficiently identify alleged customers).

In the FAC, Surfaces tries to salvage its claim from the original iteration in the Verified Complaint (ECF No. 1) by adding inconsequential details about a "holding company" that was formed by Surfaces while it was in negotiations with Point Blank. FAC at ¶¶ 165-167. The remainder of the claim is nothing more than Surfaces' mechanic recitation that "On information and belief, Defendants intentionally and unjustifiably interfered with and disrupted Surfaces' ***potential business relations*** when they appropriated Surfaces' demo kit and trade secret information to steal its ***future customers.***" *Id*. at ¶ 169 (emphasis added). Surfaces also references

"customers" in an abstract and formulaic way that is legally insufficient for a tortious interference claim under Eleventh Circuit precedent and Florida law. *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821, 821 (Fla. 1996) ("[I]n order to establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with identifiable customers."); *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.").

Count IX fails to state a legal claim.

### iii. Count X: Unjust Enrichment

To state a cause of action for unjust enrichment, plaintiff must show: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *See Henry M. Butler Inc. v. Trizec Properties Inc.*, 524 So. 2d 710 (Fla. 2d DCA 1988).

The facts and claims in the FAC are inapposite. On one hand, Surfaces (i) admits that Defendants immediately returned the Demo Kit (FAC at ¶ 60 ("On October 19, 2020, Surfaces learned that Point Blank had delivered Surfaces' demo kit to Trigon…"); and (ii) cannot even allege in the FAC that any information has been taken by Defendants (or Trigon). FAC at ¶ 152, Count VII ("Additionally, upon reacquiring its demo kit, Surfaces will have to expend significant resources assessing ***what (if any)*** proprietary information Defendants took from it....") (emphasis added). However, in Count X, Surfaces states that Defendants have "wrongfully accepted and retained, and continue to accept and retain, the benefits of Surfaces' property (the demo kit)…" *Id*. at ¶ 177.

Moreover, Surfaces acknowledges that, at least until October 16, 2020—when Point Blank removed itself from negotiations—Surfaces was aware and amenable to Point Blank's possession of the Demo Kit through Trigon. *Id*. at ¶ 57, FN 1 ("The parties had previously planned to have Forman come to California to meet with Surfaces representatives personally and hand-deliver the kit during the meeting."). Then, Surfaces admits that, at the latest, Defendants returned the Demo Kit to Trigon by October 19, 2020—three (3) days after it ended negotiations with Surfaces. *Id*. at ¶ 60. Accordingly, Defendants did not receive any "benefit" from Surfaces. Instead, it received the Demo Kit through the Agreement Pabellon/Surfaces had with Trigon.

There is no factual basis in the FAC to identify what, if any, benefit the Defendants received since the Demo Kit was immediately returned to Trigon. *See Variety Children's Hospital v. Vigliotti,* 385 So. 2d 1052 (Fla. 3d DCA 1980) (One basic element of unjust enrichment is that some benefit must flow to the party sought to be charged); *see also Coffee Pot Plaza Partnership v. Arrow Air Conditioning and Refrigeration, Inc*., 412 So. 2d 882, 884 (Fla. 2d DCA 1982) ("While the repairs no doubt enhanced the value of the equipment, it is speculative to say that any benefit has come to Coffee Pot since Coffee Pot did not receive its rental payments from Gulf Shores…").

Count XI for unjust enrichment should be dismissed.

**II.     The State and Federal Trade Secret Claims Fail to Plead Misappropriation or Identify Reasonable Steps to Safeguard the Alleged Trade Secret**

**A.     <u>Misappropriation</u>**
**i.     <u>Counts III, IV, and VI: Misappropriation of Trade Secrets in Violation of Florida Uniform Trade Secrets Act</u>**

FUTSA provides a cause of action for the misappropriation of trade secrets. Fla. Stat. §§ 688.001–009. "To prevail on a FUTSA claim, a plaintiff must demonstrate that (1) it possessed a 'trade secret' and (2) the secret was misappropriated." *Yellowfin Yachts, Inc. v. Barker Boatworks,*

12

*LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018) (citing *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 853 (11th Cir. 2017)). "Misappropriation" includes the "[d]isclosure or use of a trade secret of another without express or ***implied consent*** by a person who ... [a]t the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was ... [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or [d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use...." Fla. Stat. § 688.002(2) (emphasis added).

In this case, Surfaces fails to plead misappropriation. Defendants had ***implied consent*** from Pabellon/Surfaces to possess the Demo Kit at least until October 16, 2020. FAC at ¶ 57, FN 1 ("The parties had previously planned to have Forman come to California to meet with Surfaces representatives personally and hand-deliver the kit during the meeting."). The FAC confirms that Defendants had consent to possess the Demo Kit as demonstrated by Surfaces' request for the return of the Demo Kit after Defendants withdrew from negotiations. *Id*. at ¶¶ 55-56 ("…Point Blank would be putting its business discussions with Surfaces on hold until Surfaces and Trigon reached an agreement…Rubin told Foreman that this was 'no problem' and requested only that Point Blank returned Surfaces' demo kit."). Immediately after withdrawing from negotiations on October 16, 2020, Defendants returned the Demo Kit to Trigon. *Id*. at ¶ 60 ("On October 19, 2020, Surfaces learned that Point Blank had delivered Surfaces' demo kit to Trigon…").

Accordingly, Surfaces pleads itself out of court because it is factually impossible for Defendants to have misappropriated the Demo Kit because it was promptly returned immediately after Surfaces withdrew their consent. *M.C. Dean, Inc. v. City of Miami Beach, Florida*, 199 F. Supp. 3d 1349, 1357 (S.D. Fla. 2016) ("For liability to attach under the DTSA and FUTSA, the information must be the fruit of a wrongful acquisition, or misappropriation.").

13

Furthermore, an injunction is not appropriate when "a defendant voluntarily ceases its offending conduct and there is no reasonable expectation that it will repeat the wrong." *Metzler v. Lykes Pasco, Inc.*, 972 F. Supp. 1438, 1443 (S.D. Fla. 1997) (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953). "In all cases, the moving party must satisfy the court that it **needs** an injunction by showing that there is more than a **mere possibility** that the wrong will reoccur. There must be some cognizable danger." *Id.* (emphasis added). In this case, as explained above, Surfaces has admitted that Defendants do not have the Demo Kit. Moreover, Surfaces cannot even allege in the FAC that any information has been taken by Defendants (or Trigon). FAC at ¶ 152 ("Additionally, upon reacquiring its demo kit, Surfaces will have to expend significant resources assessing **what (if any)** proprietary information Defendants took from it....") (emphasis added). Simply relying on a baseless civil conspiracy claim that links Defendants with Trigon despite facts in the FAC to the contrary is improper.

Count III's request for injunctive relief is baseless because there is nothing to enjoin; similarly, Counts IV and VI (conspiracy) for damages should be dismissed because there are no damages because the factual support in the FAC establishes that there was no misappropriation.

### ii. Count V: Defend Trade Secrets Act

Under the Defend Trade Secrets Act, 18 U.S.C. § 1836, "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." *Id*. A trade secret is "misappropriated" by, *inter alia*, "disclosure or use of a trade secret of another without express or implied consent by a person who ... at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was ... acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or ... derived

from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)-(iii). For the same reasons as explained above, Count V must be dismissed because there is an affirmative showing by Plaintiff in the FAC that there was no misappropriation by Defendants. *Iqbal*, 556 U.S. 662, 678 (2009) ("…in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations.").

### B.   Reasonable Steps to Safeguard the Alleged Trade Secret

As previously addressed in this Motion, both the DTSA and its state counterpart, FUTSA, define misappropriation in a manner that gives rise to a duty to maintain the secrecy or limit the use of the trade secret. *Temurian v. Piccolo*, 18-62737-CIV, 2019 WL 5963831, at *6 (S.D. Fla. November 13, 2019) (citing 18 U.S.C. § 1839(5)); § 688.002(4), Fla. Stat. ("Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."). In Counts III-VI, Surfaces simply parrots the elements of DTSA and FUTSA to satisfy its duty to maintain the secrecy of its Demo Kit. FAC at ¶¶ 94, 112 ("Surfaces made reasonable efforts under the circumstances to maintain its trade secrets"); *Id*. at ¶¶ 126 ("Surfaces took reasonable measures to keep such information secret"). This is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.").

Surfaces fails to identify any agreement, non-disclosure or otherwise, that it signed with Defendants. The only evidence in the FAC of any efforts Surfaces took to satisfy its duty to maintain the secrecy of the Demo Kit is an agreement **Pabellon made with Trigon**. FAC at ¶ 24. Moreover, as already addressed, Surfaces was aware that Trigon provided the Demo Kit to Point Blank long before its relationship soured with Trigon and it still took no efforts to protect its

alleged trade secret as it relates to Defendants. *Id*. at ¶¶ 55-56 ("…Point Blank would be putting its business discussions with Surfaces on hold until Surfaces and Trigon reached an agreement…Rubin told Foreman that this was 'no problem' and requested only that Point Blank returned Surfaces' demo kit."); *Id*. at ¶ 39 (Tuncay "had given the demo kit he received from Pabellon to Point Blank."). *Temurian v. Piccolo*, 18-62737-CIV, 2019 WL 5963831, at *6 (S.D. Fla. November 13, 2019) (finding that simply "demanding return of their customer list after the fact, does not constitute a reasonable step to safeguard secrecy of the data.").

Surfaces' failure to take reasonable steps to protect its alleged trade secret is yet another basis for dismissal of Counts III-VI. *Id.* at *6 (dismissing plaintiff's DTSA claim *with prejudice* because plaintiff failed to identify reasonable steps to protect the alleged trade secret); *Laing v. BP Exploration & Production Inc.*, No. 13-1041-CIV, 2014 WL 272846, at *4 (M.D. Fla. Jan. 14, 2014) (court rejected plaintiff's argument the adequacy of his efforts to maintain the secrecy of his idea could not be resolved on a motion to dismiss); *M.C. Dean, Inc. v. City of Miami Beach, Florida*, 199 F. Supp. 3d 1349, 1357 (S.D. Fla. 2016) (dismissing FUTSA and DTSA claims as plaintiff failed to allege "it took any steps to maintain secrecy of its information…whether by contract or by any other means.").

### III. Count VII, CFAA: The FAC Establishes that Defendants Did Not Access the Demo Kit and Surfaces has Failed to Plead Statutory Damages

To state a claim under the CFAA, a plaintiff must allege (1) a defendant intentionally accessed a protected computer; (2) without authorization or exceeding authorized access; (3) the defendant thereby obtained information; and (4) the plaintiff suffered damage or loss of at least $5,000.00. *See Fla. Atl. Univ. Bd. of Trs. v. Parsont*, 465 F. Supp. 3d 1279, 1289 (S.D. Fla. 2020) (internal quotation and citation omitted). Plaintiffs have not sufficiently pled two essential elements of their CFAA claim—(i) unauthorized access; and (ii) statutory loss or damage.

Although the CFAA does not define "without authorization," it makes clear that "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6); *see also EarthCam, Inc. v. OxBlue Corp.*, 703 F. App'x 803, 808 (11th Cir. 2017) ("[O]ne of the lessons from [our precedent] may be that a person exceeds authorized access if he or she uses the access in a way that contravenes any policy or term of use governing the computer in question."). In Count VII, the basis for Surfaces' claim is that Defendants have violated the CFAA by "wrongfully retaining the equipment after Surfaces demanded its return." FAC at ¶¶ 145-155. As previously addressed, Defendants had authorized access to the Demo Kit at least until October 16, 2020. *Id*. at ¶¶ 55-56 ("…Point Blank would be putting its business discussions with Surfaces on hold until Surfaces and Trigon reached an agreement…Rubin told Foreman that this was 'no problem' and requested only that Point Blank returned Surfaces' demo kit."). However, immediately after withdrawing from negotiations on October 16, 2020, Plaintiffs admit that Defendants returned the Demo Kit to Trigon. *Id*. at ¶ 60 ("On October 19, 2020, Surfaces learned that Point Blank had delivered Surfaces' demo kit to Trigon…"). Accordingly, ***at most***, there was a three-day window between when "authorization" was withdrawn and Surfaces had confirmation that the Demo Kit was returned to its rightful owner in relation to Point Blank—Trigon.

However, in the FAC, Surfaces fails to provide anything but rote conclusory allegations without any factual basis that are insufficient under Rule 8 pursuant to a motion to dismiss. FAC at ¶¶ 145-155 (alleging that Defendants violated CFAA by "wrongfully retaining the equipment after Surfaces demanded its return."); *Merl v. Warner Bros. Entertainment, Inc*., No. 12-20870-CIV, 2013 WL 266049, at *3 (S.D. Fla. Jan. 23, 2013) (quoting *Griffin Indus., Inc. v. Irvin*, 496

F.3d 1189, 1205-06 (11th Cir. 2007)). Plaintiff has failed to plead Defendants obtained unauthorized access of the Demo Kit.

As an additional basis for dismissal of Count VII, the CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11); *TEC Serv, LLC v. Crabb*, 2013 WL 12177342, at *3 (S.D. Fla. Jan. 14, 2013) (recognizing two ways for a CFAA plaintiff to show "loss": (1) lost revenues and costs as a result of interruption of service, and (2) costs incurred in responding to a CFAA violation). "Damage" under the CFAA is defined as an "impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

Here, Surfaces fails to plead the statutory amount of *loss or damages* to sustain a CFAA claim because the FAC only addresses the *value* of the information in the Demo Kit. FAC at ¶ 152 ("The *value* of the information Defendants obtained through their unauthorized access to Surfaces' demo kit exceeds $5000.") (emphasis added). Loss and/or damage is not the same as Surfaces' baseless self valuation of the information within the Demo Kit that Surfaces cannot even allege was taken. *Id*. ("Additionally, upon reacquiring its demo kit, Surfaces will have to expend significant resources assessing *what (if any)* proprietary information Defendants took from it...." *Id*. (emphasis added). Surfaces cannot meet the statutory requirement for damages.

Therefore, Count VII is legally insufficient.

## CONCLUSION

Defendants respectfully request the Court (i) dismiss Plaintiff's First Amended Complaint in its entirety as the allegations fail to provide any cognizable legal claim; and (ii) award Defendants' attorney fees pursuant to attorneys' fees pursuant to § 688.005, Fla. Stat. and 18 U.S.C. § 1836(b)(3)(B)(D) for asserting claims in bad faith.

Dated: March 18, 2021.

Respectfully submitted,

BERGER SINGERMAN LLP
350 East Las Olas Blvd, Suite 1000
Fort Lauderdale, FL  33301
Tel.: (954) 525-9900; Fax: (954) 523-2872

/s/ Marianne Curtis
Leonard Samuels
Florida Bar No:  501610
lsamuels@bergersingerman.com
drt@bergersingerman.com
vbarthelemy@bergersingerman.com
Marianne Curtis
Florida Bar No. 92729
mcurtis@bergersingerman.com
drt@bergersingeman.com
mvega@bergersingerman.com
Kenneth W. Waterway, Esq.
Florida Bar No. 994235
drt@bergersingerman.com
kwaterway@bergersingerman.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on this 18th day of March, 2021, and certify that the foregoing document is being served this day on all counsel of record identified on the Service List via transmission of Notice of Electronic Filing generated by CM/ECF.

By: /s/ Marianne Curtis
Marianne Curtis

10396171-4